UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ROBERT MACAMAUX,
    Plaintiff,

v.                                         C.A. No. 07-485ML

JACK MILLARD, M.D.,
ROGER NELSON, M.D.,
DAY KIMBALL HOSPITAL,
JOHN and JANE DOE, M.D., alias,
JOHN DOE CORPORATION, alias,
    Defendants

## MEMORANDUM AND ORDER

This matter is before the Court on motions by Defendant Roger Nelson, M.D., Defendant Jack Millard, M.D., and Defendant Day Kimball Hospital ("the Hospital") to dismiss Plaintiff Robert Macamaux's ("Macamaux") complaint pursuant to Fed. R. Civ. P. 12(b)(2).[1] Macamaux maintains that this Court's exercise of personal jurisdiction over the Hospital is proper. Macamaux concedes that this Court lacks personal jurisdiction over Drs. Millard and Nelson, but seeks to have this Court transfer the action as to those defendants to the Federal District Court for the District of Connecticut. For the reasons that follow, the Defendants' Motions to Dismiss are GRANTED as to Drs. Millard and Nelson and DENIED as to the Hospital. The Plaintiff's request to transfer is GRANTED as to the Hospital only.

---

[1] Defendant Roger Nelson, M.D., also moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(3), for improper venue.

1

## I. Background

Macamaux, a Rhode Island resident, filed this complaint on December 31, 2007, alleging that the defendants acted negligently and that the Hospital violated the Emergency Medical Treatment and Active Labor Act ("EMTALA"), causing him to suffer severe and permanent injuries to his spinal cord.

The events giving rise to this suit occurred on January 16, 2006, when Macamaux was treated in Day Kimball Hospital's Emergency Department after he suffered injuries in a motor vehicle accident in Connecticut. Defendant Millard, an emergency physician, ordered x-rays of Macamaux's spine, which were interpreted by Defendant Nelson. Macamaux was subsequently discharged from the Hospital. All of the actions taken by Drs. Millard and Nelson took place in Connecticut.

Three days later, on January 19, 2006, Macamaux was treated at Landmark Medical Center in Rhode Island and was then transferred to Rhode Island Hospital, where he was diagnosed with fractures and dislocation of vertebrae. He alleges that his fractured vertebrae went undiagnosed while he was treated by the Hospital. Macamaux filed the instant suit on December 31, 2007, with this Court. The sixteen-count suit alleges, among other things, that all defendants acted negligently. It also charges the Hospital and the unnamed corporate defendant with corporate and vicarious liability. Finally, it charges the Hospital with two counts of EMTALA violations: failure to provide medical screening, and transfer without stabilization.

## II. Analysis

*The Hospital*

In his complaint, Macamaux alleges both diversity of citizenship, pursuant to 28 U.S.C. § 1332, and federal question jurisdiction, pursuant to 28 U.S.C. § 1331.[2] Macamaux contends that an exercise of personal jurisdiction over the Hospital is proper because the Hospital has long promoted itself as serving the health care needs of patients from Connecticut, Massachusetts, and Rhode Island. Furthermore, Macamaux argues that, because the Hospital has engaged in advertising, fundraising, recruitment, and legal activity in Rhode Island, the Court should find a basis for exercising personal jurisdiction over it. The Hospital, in response, maintains that it has not established the requisite minimum contacts in Rhode Island to support a finding that an exercise of personal jurisdiction over it would be proper in this Court.

The plaintiff bears the burden of proving that the Court has personal jurisdiction over the defendants. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002) (citations omitted). In making this determination, the Court "draw[s] the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). Therefore, for purposes of these motions, this Court accepts the facts as proffered by Macamaux.

When presented with a motion to dismiss for lack of personal jurisdiction pursuant to

---

[2] For purposes of federal question jurisdiction, venue is proper only in Connecticut, because all of the defendants are residents of Connecticut and the events or omissions giving rise to this claim occurred in Connecticut. See 28 U.S.C. § 1391(b). Macamaux does not address this issue in his brief.

3

Fed. R. Civ. P. 12(b)(2), this Court must select an evidentiary standard to assess whether the plaintiff has met his burden of establishing the Court's jurisdiction over the defendants. Daynard, 290 F.3d at 50-51; (citing Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995) and Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 674-75(1st Cir. 1992)). The standards available to this Court include the "prima facie" standard, the "preponderance" standard, and the "likelihood" standard. Women & Infants Hosp. of R.I. v. Cmty. Health Network of Conn., Inc., 394 F. Supp. 2d 488, 490 (D.R.I. 2005).

The "prima facie" standard "permits the district court 'to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'" Foster-Miller, Inc., 46 F.3d at 145 (quoting Boit., 967 F.2d at 675). This standard has been called "[t]he most conventional" of these options. Foster-Miller, Inc., 46 F.3d at 145. This Court concludes that this standard is most appropriate in the instant case, as it does not "feature conflicting versions of the facts" which is typical of cases requiring the preponderance standard, nor is "the assertion of jurisdiction [] bound up with the claim on the merits," which often requires the likelihood standard. Id., at 145, 146. Therefore, this Court must determine whether Macamaux has made a prima facie showing that personal jurisdiction over the Hospital is proper.

> Whether a federal court has personal jurisdiction over a defendant depends upon two criteria: (1) whether the mandates of the forum state's long-arm statute have been satisfied, and (2) whether the defendant has been hailed [*sic*] into the particular court in accordance with the due process clause of the Fourteenth Amendment to the United States Constitution.

Russell v. Enterprise Rent-A-Car Co. of Rhode Island, 160 F. Supp. 2d 239, 249-50 (D.R.I. 2001) (quoting Levinger v. Matthew Stuart & Co., 676 F. Supp. 437, 439 (D.R.I.

1988)).

Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, provides for the exercise of personal jurisdiction to the fullest extent permitted under the United States Constitution. See Donatelli v. Nat'l Hockey League, 893 F.2d 459, 461 (1st Cir. 1990). This Court must determine whether exercising jurisdiction over the Hospital comports with the requirements of due process. Id. In conducting a due process analysis, this Court considers whether the Hospital has "purposely established 'minimum contacts' with the forum such that [it] can reasonably anticipate being haled into that forum's court." U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d 9, 11 (1st Cir. 1990) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1984)). If such contacts exist, this Court must then consider whether the Hospital's "minimum contacts" with the forum of Rhode Island are such that jurisdiction would "comport with 'fair play and substantial justice.'" U.S.S. Yachts, Inc., 894 F.2d at 11 (citing Burger King Corp., 471 U.S. at 476)).

Macamaux contends that this Court may properly exercise general, rather than specific, jurisdiction over the Hospital. General jurisdiction is proper "when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). "[S]ingle or isolated items of activities in a state . . . are not enough to subject [a party] to suit on causes of action unconnected with the activities there." Donatelli, 893 F.2d at 463 (quoting Int'l Shoe Co. v. Washington, 326

U.S. 310, 317 (1945)). Instead, this Court must "evaluate the nature of the contacts and, relatedly, the degree to which they represent a purposeful availment of the forum's protections and benefits." Pritzker v. Yari, 42 F.3d 53, 62 (1st Cir. 1994).

In Harlow v. Children's Hosp., the court upheld the dismissal of a negligence action alleging medical malpractice for lack of personal jurisdiction, finding that

> [t]reating patients from Maine in Massachusetts, even on a regular basis, is not the same as engaging in continuous and systematic activity in Maine. A hospital that treats Maine residents in Massachusetts is, quite simply, in a different position from a hospital that treats Maine residents in Maine, or a firm that sells products to Maine residents in Maine. That the [h]ospital derives revenue from treating Maine patients . . . does not alter the basic fact that the [h]ospital is not 'engaged in continuous and systematic activity, unrelated to the suit, in [Maine.]

Harlow, 432 F.3d 50, 66 (1st Cir. 2005) (quoting United Elec., Radio and Mach. Workers of Am., 960 F.2d at 1088).

Macamaux argues that the Hospital's promotional activities are directed to residents of Rhode Island and thus constitute minimum contacts with Rhode Island sufficient to satisfy due process requirements. Specifically, Macamaux points to the following contacts and activities of the Hospital in Rhode Island: advertisements in a Connecticut-based newspaper distributed in Rhode Island, mostly pertaining to educational or developmental events (Def. Day Kimball Hosp.'s Resp. to Pl.'s Interrog. # 8); the treatment of Rhode Island residents at the Hospital in Connecticut (Id. at # 9); the recruitment and employment of Rhode Island residents (Id. at # 9, 13, 14); the solicitation and receipt of donations from Rhode Island residents (Id. at # 9); and the initiation of a

6

collection action on March 10, 2008, in a Rhode Island court (Id. at # 22).[3] Macamaux argues that these activities and contacts with Rhode Island qualify as minimum contacts supporting an exercise of jurisdiction. The Hospital, in response, contends that it does not have any facilities in Rhode Island, it does not provide any medical services in Rhode Island, nor does it actively solicit patients in Rhode Island, and therefore that purposeful minimum contacts have not been made.

The court's decision in Harlow is instructive here. Similar to the facts in Harlow, the Hospital's minimal activity in Rhode Island does not qualify as systematic and continuous activity to support a finding of minimum contacts for an exercise of personal jurisdiction in the forum state. This Court finds no merit in Macamaux's argument that the Hospital's employee recruitment activity in Rhode Island (which included job fairs, advertising in the Providence Journal, a presentation, and the use of a recruitment firm (Def. Day Kimball Hosp. Resp. to Pl.'s Interrog. # 14)) constitutes sufficient minimum contacts. See Sandstrom v. Chemlawn Corp., 904 F.2d 83, 89-90 (1st Cir. 1990) (holding that recruitment of personnel, in addition to other minimal contacts, was not sufficient to support the exercise of personal jurisdiction over the defendant). This Court also finds that the Hospital's admission that it has treated Rhode Island residents as patients and employed thirty-four Rhode Island residents at its facilities within the state of Connecticut (Def. Day Kimball Hosp.'s Resp. to Pl.'s Interrog. # 9) cannot support a finding of

---

[3] The one action which the Hospital instituted was filed on March 10, 2008, more than two months after the filing of the instant action on December 31, 2007. This Court does not consider contacts with the forum state which arise subsequent to the filing of the original complaint for purposes of a personal jurisdictional analysis. See Harlow, 432 F.3d at 65 ("[C]ontacts after the filing of the complaint are not considered.").

7

minimum contacts with the forum state of Rhode Island for personal jurisdictional purposes. See Morel *ex rel.* Moorehead v. Estate of Davidson, 148 F. Supp. 2d 161, 167-68 (D.R.I. 2001) ("[I]t is the defendant's contacts with the forum state, not its residents, that matter for purposes of in personam jurisdiction.") Furthermore, this Court finds that the Hospital's practice of soliciting and receiving some donations from Rhode Island residents by mail does not constitute "continuous and systematic activity" to confer general jurisdiction. See Steego Corp. v. Ravenal, 830 F. Supp. 42, 51 (D. Mass. 1993) (holding that the practice of making donations to charities in Massachusetts was not sufficient to establish minimum contacts for personal jurisdiction purposes). This Court concludes that the Hospital's contacts and activities with the state of Rhode Island do not rise to the level of purposeful continuous and systematic activity sufficient to support an exercise of its jurisdiction over the Hospital.

Because the Court has determined that the Hospital did not have the minimum contacts required to support the exercise of personal jurisdiction, there is no need to address the reasonableness prong of the jurisdictional analysis. See N. Am. Catholic Educ. Programming, 536 F. Supp. 2d 181, 196 (D.R.I. 2008) (citing Ticketmaster-New York, Inc., 26 F.3d at 210 ("the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction.")).

In lieu of dismissal, Macamaux contends that the entire suit should be transferred to the District Court for the District of Connecticut pursuant to Title 28 of the U.S. Code, section 1406. Such a transfer is critical to Macamaux's claim because Connecticut's two-

year statute of limitations expired shortly after he filed suit in this Court and, therefore, he cannot re-file in Connecticut, where personal jurisdiction would originally have been proper.[4]

Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Supreme Court has addressed this provision in Goldlawr, Inc. v. Heiman, concluding that the legislative intent was to "avoid[] the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn." Goldlawr, Inc., 369 U.S. 463, 466 (1962). The determination whether to dismiss or transfer a case is one that is left to the sound discretion of the trial court. Cormier v. Fisher, 404 F. Supp. 2d 357, 363 (D. Me. 2005) (citing Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993)).

The District Court for the District of Massachusetts addressed a similar situation in which the Court lacked personal jurisdiction over Georgia residents for claims based on a motor vehicle accident in Florida: the statute of limitations on the plaintiff's claims had run under Florida law and the plaintiff requested that the court transfer his claim to the District of Florida. Pedzewick v. Foe, 963 F. Supp. 48 (D. Mass. 1997). The

---

[4] Conn. Gen. Stat. § 52-584 states, in relevant part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . ."
9

Pedzewick court dismissed the claim and denied the motion to transfer, stating that:

> [T]ransfer in this case would result in an abuse of the judicial system. The transfer statutes were not intended to give plaintiffs an end run around the rules of personal jurisdiction and venue, but rather were intended to facilitate fairness and result in greater convenience to litigants. Fairness and convenience are not furthered by allowing a party purposefully to file in the wrong court, thereby holding open the statute of limitations indefinitely.

Id., at 51 (internal citation omitted). The court continued: "a court ought deny transfer when a plaintiff fails to exercise proper diligence or does not act in good faith in deciding where to file suit." Id., at 52. Under Pedzewick, the determination of whether to transfer a case requires an analysis of whether a plaintiff filed in a forum state without proper jurisdiction with the erroneous but good faith belief that personal jurisdiction over a defendant might lie.

The District Court for the District of Maine has taken a different tact than the Pedzewick court. Cormier, 404 F. Supp. 2d 357. In Cormier, residents of Maine brought suit against a Georgia resident for injuries related to a car accident which took place in Virginia. The court found that, while it lacked personal jurisdiction under the long-arm statute of Maine, transfer to the District Court for the District of Virginia was in the interests of justice. Id., at 365. The Cormier court found support, in part, in the Goldlawr court's determination that the language of section 1406(a) "'is amply broad enough to authorize the transfer of cases, *however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not.*'" Id. (quoting Goldlawr, 369 U.S. at 466) (emphasis in Cormier). Unlike the court in Pedzewick, the Cormier court declined to adopt a bad faith inquiry, focusing instead on the fact that a dismissal would "forever foreclos[e] [the plaintiffs']

10

ability to present their claim and the possibility of recovery." Cormier, 404 F. Supp. 2d at 365.

Macamaux's claims against the Hospital can be distinguished from the claim in Pedzewick. As illustrated above, this Court has determined that Macamaux has failed to demonstrate that the Hospital had purposely established minimum contacts with Rhode Island to enable this Court to exercise jurisdiction. However, Macamaux did point to various types of conduct within Rhode Island in which the Hospital did engage: some marketing, recruitment and employment, and fundraising efforts. While this Court has determined that these activities do not constitute purposeful availment in the forum state of Rhode Island to support a finding of jurisdiction, that determination does not mean that Macamaux acted in bad faith in bringing suit against the Hospital in Rhode Island. At worst, it appears that Macamaux improvidently filed in a jurisdiction where the Hospital had *some*, though insufficient, contacts.

Macamaux's mistake in filing suit against the Hospital does not rise to the level of abusiveness and bad faith present in Pedzewick. Furthermore, this Court acknowledges that it is preferable to decide a case on its merits. See Goldlawr, Inc., 369 U.S. at 466-67. Accordingly, this Court grants Macamaux's request to transfer as it relates to the counts against the Hospital.

*Jack Millard, M.D. and Roger Nelson, M.D.*

Dr. Millard is a resident of the Commonwealth of Massachusetts.[5] Dr. Nelson is a resident of the state of Connecticut. Both were working in the Hospital in Connecticut. As noted above, Macamaux has conceded that Drs. Millard and Nelson do not have sufficient contacts with Rhode Island to justify an exercise of personal jurisdiction over these defendants by this Court. Macamaux has not offered any justification for filing suit against Drs. Millard and Nelson in Rhode Island. Furthermore, when faced with the Defendants' Motion to Dismiss for lack of personal jurisdiction, Macamaux conducted no discovery on jurisdiction as it related to Drs. Millard or Nelson. In considering the filings and proffered evidence, it is apparent that at no time did Macamaux have a good faith belief that this Court could properly exercise personal jurisdiction over Drs. Millard and Nelson.

Applying the Pedzewick standard to the claims against Drs. Millard and Nelson, this Court finds that Macamaux has made no showing that the transfer of the claims against Drs. Millard and Nelson would be in the interest of justice. As a result, Macamaux's request to transfer as it relates to the claims against Drs. Millard and Nelson is denied. See Nordica USA Corp. v. Ole Sorensen, 475 F. Supp. 2d 128, 139-40 (D.N.H. 2007) (dismissing suit against one defendant pursuant to Fed. R. Civ. P. 12(b)(6) and transferring the remaining claims pursuant to 28 U.S.C. § 1406(a)). The Motions to Dismiss submitted by Defendants Millard, M.D. and Nelson, M.D. are GRANTED.

---

[5] This Court notes that the complaint erroneously asserted that Dr. Millard was a resident of the state of Connecticut. Compl. ¶ 2.

### III. Conclusion

For the reasons detailed above, this Court finds that the Hospital does not have sufficient contacts with Rhode Island to support an exercise of personal jurisdiction. However, Macamaux has demonstrated that transferring the suit against the Hospital to the District Court for the District of Connecticut is in the interest of justice. Therefore, Defendant Day Kimball Hospital's Motion to Dismiss is DENIED, and Macamaux's request to transfer as to the Hospital is GRANTED.

However, this Court lacks personal jurisdiction over Drs. Millard and Nelson, and Macamaux has failed to demonstrate that it is in the interest of justice to transfer the case as to these defendants. As a result, Drs. Millard's and Nelson's Motions to Dismiss are GRANTED, and Macamaux's request to transfer the case as to these defendants is DENIED.

SO ORDERED.

_____
Mary M. Lisi
Chief United States District Judge
January 28, 2009