UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT MACAMAUX, | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 09-cv-164 (JCH) |
| | : | |
| DAY KIMBALL HOSPITAL, | : | SEPTEMBER 4, 2009 |
| Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION TO DISMISS (DOC. NO. 55)**

**I.    INTRODUCTION**

Plaintiff Robert Macamaux brings this action against defendant Day Kimball
Hospital ("Day Kimball").[1]  Macamaux is a citizen and resident of Woonsocket, Rhode
Island.  Day Kimball is a hospital located in Pomfret, Connecticut.

On January 16, 2006, Macamaux was transported to Day Kimball following a
motor vehicle accident.  In his Amended Complaint, Macamaux alleges that he suffered
severe and permanent injuries as a result of Day Kimball's failure to diagnose and treat
an unstable spinal injury he sustained in the accident.[2]  Specifically, Macamaux asserts
six claims against Day Kimball: (1) failure to provide medical screening in violation of
the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, et seq.

---

[1] There were originally six defendants in this suit.  See Complaint (Doc. No. 1).  After the
dismissal of the claims against two defendants, see Memorandum and Order (Doc. No. 50), and an
Amended Complaint (Doc. No. 74), Day Kimball Hospital is the only remaining defendant.

[2] Macamaux filed his Complaint on December 31, 2007 in the District of Rhode Island.  See
Complaint (Doc. No. 1).  On January 28, 2009, this case was transferred to this court.  See Memorandum
and Order (Doc. No. 50).  Day Kimball filed the pending Motion to Dismiss (Doc. No. 55) on March 20,
2009.  Macamaux filed an Amended Complaint on July 22, 2009.  See Amended Complaint (Doc. No. 74).
Because the substance of Macamaux's claims in the Amended Complaint is the same as in the original
Complaint, and because the Motion to Dismiss is based on Macamaux's failure to comply with a statutory
requirement prior to the filing of the initial Complaint, the pending Motion to Dismiss is equally applicable
to the Amended Complaint.  Consequently,  the court addresses the Motion as it applies to the Amended
Complaint.

-1-

("EMTALA"); (2) transfer without stabilization in violation of EMTALA; (3) negligence; (4) lack of informed consent; (5) corporate liability; and (6) vicarious liability.  Day Kimball moves to dismiss this suit in its entirety pursuant to Conn. Gen. Stat. § 52-190a.  For the reasons set forth herein, Day Kimball's Motion is denied.

## II.    BACKGROUND[3]

### A.    Facts

According to the Amended Complaint, on January 16, 2006, Robert Macamaux presented to Day Kimball Hospital with an emergency medical condition following a motor vehicle accident.  See Amended Complaint (Doc. No. 74) at ¶ 4.  The hospital's emergency room physician, Dr. Roger Nelson, M.D., ordered x-rays of Macamaux's spine, which were subsequently interpreted by one of the hospital's radiologists, Dr. Jack Millard, M.D.  See id. at ¶ 5.  The x-rays showed that Macamaux had a spinal fracture, but did not permit full visualization and evaluation of Macamaux's cervical spine.  See id. at ¶¶ 6, 7.  Because the x-rays did not display a complete picture of Macamaux's spine, they did not show that he had an unstable injury requiring immediate care and treatment.  See id. at ¶ 8.  Consequently, Macamaux was discharged from Day Kimball with an undetected and unstable spinal trauma.  See id. at ¶ 9.  Macamaux suffered severe and permanent neurological injuries and other damages as a result of Day Kimball's physicians' failure to diagnose and treat this spinal injury.  See id. at ¶ 10.

---

[3] In deciding a motion to dismiss, the court accepts the allegations of the Complaint as true and construes them in a manner favorable to the pleader.  Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).

B.     Procedural History

On December 31, 2007, Macamaux initiated the present action in the United States District Court for the District of Rhode Island against Dr. Jack Millard, M.D., Dr. Roger Nelson, M.D., Day Kimball Hospital, Drs. John and Jane Doe, M.D., aliases, and John Doe Corporation, alias.  See Complaint (Doc. No. 1).  Macamaux claimed both federal question jurisdiction under 28 U.S.C. § 1331 (based on EMTALA) and diversity jurisdiction under 28 U.S.C. § 1332.  See id.  Macamaux did not file with his Complaint a certificate of good faith or a written opinion of a similar health care provider demonstrating good faith as required by Conn. Gen. Stat. § 52-190a.[4]

Millard, Nelson, and Day Kimball moved to dismiss Macamaux's Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  In an Order dated January 28, 2009, the district court in Rhode Island found that it lacked personal jurisdiction over Millard, Nelson, and Day Kimball.  See Order (Doc. No. 50) at 13.  The court dismissed Macamaux's claims against Millard and Nelson for lack of personal jurisdiction, but found that the interests of justice required that the claims against Day Kimball be transferred to the District of Connecticut.  See id.  Such transfer occurred on

_____

[4] Section 52-190a states: "No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider . . . that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion."  Conn. Gen. Stat. 52-190a(a).

January 28, 2009.  See Electronic Transfer Notice (Doc. No. 51)

On March 20, 2009, Day Kimball filed the instant Motion to Dismiss.  See Motion to Dismiss (Doc. No. 55).  In the Motion, Day Kimball asserts that this action should be dismissed because Macamaux failed to file a certificate of good faith and a written opinion of a similar health care provider demonstrating good faith, as required by Conn. Gen. Stat. § 52-190a, when he initiated this action on December 31, 2007.  See id. Macamaux filed a certificate of good faith and opinion of a similar health care provider on May 22, 2009.  See Certificate of Good Faith (Doc. No. 66).

Pursuant to a stipulation, on July 22, 2009, Macamaux filed an Amended Complaint, dropping his claims against Millard, Nelson, the John and Jane Doe doctors, and the John Doe corporation.  See Stipulation (Doc. No. 73); Amended Complaint (Doc. No. 74).  Day Kimball continues to assert that this action should be dismissed pursuant to Conn. Gen. Stat. § 52-190a.

III.    **DISCUSSION**

In its Memorandum in Support of Motion to Dismiss, Day Kimball argues that:

[Section] 52-190a required at the time [Macamaux] filed his lawsuit that he attach a certificate of good faith to which was attached a written opinion of a similar health care provider [that] there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. [Macamaux] filed neither a good faith certificate nor a written opinion of a similar health care provider as to Day Kimball Hospital or as to any other health care provider.  Accordingly, as dictated by the language of [section 52-190a] . . . [Macamaux's] claims must be dismissed.

Defendant's Memorandum in Support of Motion to Dismiss ("Mem. in Supp.") (Doc. No. 56) at 7.  Macamaux contends that: (1) because the scope of section 52-190a is expressly limited to medical negligence claims, and because "EMTALA claims do not

-4-

sound in medical negligence," his EMTALA claims are not subject to dismissal under

section 52-190a; (2) any defect in his initial pleading was cured by his filing of a good

faith certificate and opinion of similar health care provider on May 22, 2009;[5] and (3)

section 52-190a does not apply to his informed consent claims.[6]  See Mem. in Opp.

(Doc. No. 70) at 1-2.

      A.    The History and Purpose of Section 52-190a

Section 52-190a was originally enacted as part of the Tort Reform Act of 1986 to

prevent frivolous medical malpractice actions.  See Dias v. Grady, 292 Conn. 350, 357

(Conn. 2009).  The original version of the statute required the plaintiff in any medical

malpractice suit to conduct "a reasonable inquiry as permitted by the circumstances to

determine that there are grounds for a good faith belief that there has been negligence

in the care or treatment of the [plaintiff]" and to file a certificate "that such reasonable

inquiry gave rise to a good faith belief that grounds exist for an action against each

named defendant."  Id.; see also Conn. Gen. Stat. (Rev. to 1987) § 52-190a(a).

To demonstrate that such an inquiry was conducted, the Connecticut Legislature

amended the law in 2005 to require a medical malpractice plaintiff to attach to the initial

pleading a "written and signed opinion of a similar health care provider . . . that there

---

[5] In connection with this argument, Macamaux contends that, "[i]nterpreting and applying § 52-190a as precluding plaintiff from 'curing' the absence of the certificate and opinion required by Connecticut (but not Rhode Island) law when the case was originally filed in Rhode Island, would be a justice-defeating result that would place § 52-190a in direct conflict with the congressional claim-preservation objectives and purposes of [28 U.S.C.] § 1406(a) – a result which would plainly subject § 52-190a to federal preemption."  See Plaintiff's Memorandum in Opposition of Motion to Dismiss ("Mem. in Opp.") (Doc. No. 70) at 2.

[6] Because the court concludes that Macamaux has complied with the requirements of Conn. Gen. Stat. § 52-190a as it applies to this case, the court does not address Macamaux's arguments that section 52-190a does not apply to his EMTALA or informed consent claims.

appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion."  2005 Conn. Acts 275 (amending Conn. Gen. Stat. 52-190a).  "The legislative history of this amendment indicates that it was intended to address the problem that some attorneys, either intentionally or innocently, were misrepresenting in the certificate of good faith the information that they had obtained from experts."  Dias v. Grady, 292 Conn. 350, 357-358 (Conn. 2009) (citing Conn. Joint Standing Committee Hearings, Judiciary, Pt. 18, 2005 Sess., p. 5553, testimony of Michael D. Neubert).

The 2005 amendment also added subsection (c) of the statute, which states that, "[t]he failure to obtain and file the written opinion" of a similar health care provider "shall be grounds for the dismissal of the action."  Conn. Gen. Stat. § 52-190a(c).  Thus, the plain language of the current statute "expressly provides for dismissal of an action when a plaintiff fails to attach a written opinion of a similar health care provider to the complaint . . . ."  Rios v. CCMC Corp., 106 Conn. App. 810, 822 (App. Ct. 2008).

B.    Section 52-190a and the Present Case

There are two questions before the court: (1) was Macamaux required to comply with section 52-190a?; and, if so, (2) was Macamaux's filing of a good faith certificate and opinion on May 22, 2009 sufficient?  These questions appear to be ones of first impression.

Section 52-190a does not explicitly address a medical malpractice case which, having been filed without a good faith certificate or opinion of a similar medical provider outside of Connecticut, is transferred to Connecticut in the interests of justice.  Day Kimball argues that, in such a case, section 52-190a requires that the case be

-6-

dismissed.  The court disagrees.

When interpreting a statute, the court's fundamental objective is to "ascertain
and give effect to the apparent intent of the legislature."  ATC P'ship v. Coats North
America Consol., Inc., 284 Conn. 537, 545 (Conn. 2007).  Further, "common sense
must be used and courts must assume that a reasonable and rational result was
intended."  Norwich Land Co. v. Public Utilities Commission, 170 Conn. 1, 4 (1975).

In this case, to construe the statute as requiring dismissal of Macamaux's suit
would lead to an unreasonable and irrational result.  The District Court in Rhode Island
found that, while it did not have jurisdiction over Macamaux's claims against Day
Kimball, "that determination does not mean that Macamaux acted in bad faith in
bringing suit against the Hospital in Rhode Island."  Memorandum and Order (Doc. No.
50) at 11.  "At worst," the court noted, "it appears that Macamaux improvidently filed in a
jurisdiction where the hospital had some, though insufficient, contacts."  Id. (emphasis
in the original).  After observing that "transfer is critical to Macamaux's claim because
Connecticut's two-year statute of limitations expired shortly after [Macamaux] filed suit"
in Rhode Island and that "it is preferable to decide a case on its merits," the court
granted Macamaux's request to transfer his case to Connecticut in the interests of
justice.  Id. at 9, 11.  Thus, construing section 52-190a as requiring dismissal of this suit
would effectively deny Macamaux – a plaintiff who filed suit in good faith in his state of
residence within the applicable limitations period and now has a good faith certificate
and similar health care provider opinion – his day in court.  Such was not the intent of
the legislature.  See Dias v. Grady, 292 Conn. 350, 357-358 (Conn. 2009) ("The
legislative history of [the 2005] amendment indicates that it was intended to address the

problem that some attorneys, either intentionally or innocently, were misrepresenting in the certificate of good faith the information that they had obtained from experts")

In support of its argument, Day Kimball relies heavily on Rios v. CCMC Corp., 106 Conn. App. 810 (Conn. App. Ct. 2008), the only appellate decision to date that deals with the current, more rigorous provisions of section 52-190a. Rios, however, is inapposite. In Rios, the plaintiffs filed a complaint with a certificate of good faith but without a similar health care provider opinion. See id. at 814. When the defendants moved to dismiss the suit due to the lack of a similar health care provider opinion, the court indicated that it would "hold off ruling" on the motion and invited the plaintiffs to submit the requisite opinion. Id. The plaintiffs did not accept the court's invitation. In this case, Macamaux has filed both a good faith certificate and a similar health care provider opinion. See Certificate of Good Faith (Doc. No. 66). Day Kimball does not argue that the certificate or opinion are substantively inadequate, but rather that they were untimely filed.[7]

Further, it bears noting that, if the District Court in Rhode Island had dismissed Macamaux's suit rather than transferring it, Macamaux likely would not be facing the instant Motion to Dismiss. That is, if the Rhode Island court dismissed Macamaux's suit for lack of personal jurisdiction, Macamaux likely would have retained Connecticut counsel (he now has) to re-file his suit in this state. The new Connecticut counsel

---

[7] It also bears noting that a second case upon which Day Kimball relies heavily, Blumenkopf v. Conboy, 2008 U.S. Dist. LEXIS 68237 (D. Conn. Sept. 5, 2008) is likewise not on point. In Blumenkopf, the court addressed a situation in which the plaintiff filed with its complaint certain physician's reports which did not comply with section 52-190a. Because the reports were substantively inadequate, the court stated that it, "need not, and does not, decide whether a plaintiff can amend a complaint to add the certificate and opinions required by Connecticut law." Id. at *5.

would have known that, under Connecticut's accidental failure of suit statute, because Macamaux's first suit was timely filed and dismissed for want of jurisdiction, Macamaux could commence a new action for the same cause at any time within one year of the Rhode Island court's dismissal.  <u>See</u> Conn. Gen. Stat. § 52-592 ("If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits . . . because the action has been dismissed for want of jurisdiction . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action . . . ").  The new counsel, being admitted to practice in Connecticut, presumably would also have been familiar with section 52-190a and thus would have filed Macamaux's suit only after the requisite good faith certificate and similar health care provider opinion had been obtained. Consequently, by attempting to ensure that Macamaux would have his day in court, the District Court in Rhode Island may have actually harmed Macamaux's chances of having his suit decided on the merits.  The prospect of punishing Macamaux – because the steps the Rhode Island District Court took to permit Macamaux his day in court would deny him that if the defendants' argument prevails – seems to this court unreasonable, irrational, and contrary to both the intent of the legislature in enacting section 52-190a and the interests of justice.

Nevertheless, it would be equally unreasonable and irrational for the court to conclude that the Connecticut legislature intended to create a loophole through which a plaintiff could avoid the requirements of section 52-190a by filing a medical malpractice suit outside of Connecticut and then requesting that the suit be transferred to this state. To create such a loophole would be contrary to common sense and would lead to

Connecticut health care providers being subject to the very actions section 52-190a is meant to prevent, i.e., frivolous medical malpractice suits.  Thus, the court concludes that, when his case was transferred to Connecticut, Macamaux was obligated to file a good faith certificate and similar health care provider opinion.  The final question the court must address, then, is whether Macamaux's May 22, 2009 filing satisfied section 52-190a.  The court concludes that it did.

Before this case was transferred to Connecticut in January 2009, Macamaux was represented by the Providence, Rhode Island law firm of DeLuca & Weizenbaum, Ltd.  Because his attorneys were not admitted to practice before this court, Macamaux was a pro se plaintiff from January 28, 2009, when this case was transferred, until April 28, 2009, when Attorney John Jessep of the Bridgeport, Connecticut firm Koskoff, Koskoff, & Bieder, P.C. appeared on Macamaux's behalf.[8]  Macamaux filed a good faith certificate and opinion of similar health care provider on May 22, 2009, 24 days after the appearance of counsel.  Day Kimball does not argue that this filing is substantively insufficient; rather, it argues that it is untimely.  The court disagrees.

As previously noted, section 52-190a does not specifically address cases like Macamaux's.  The intent of the legislature was to protect Connecticut health care providers from frivolous suits rather than to preclude foreign plaintiffs from bringing malpractice actions in Connecticut.  See Dias v. Grady, 292 Conn. 350, 357 (Conn.

---

[8] During this time, the attorneys at DeLuca & Weizenbaum, Ltd., who represented Macamaux before the District Court in Rhode Island, diligently sought local counsel admitted to practice before this court in order to be admitted pro hac vice pursuant to Local Rule 83.1(d).  See Motion for Extension of Time (Doc. No. 57) at 2.  Despite counsels' efforts – discussions and reviews were conducted with seven Connecticut firms – the process took three months.  See id.; see also Notice of Appearance of John D. Jessep (Doc. No. 59).

2009) (holding that Section 52-190a was originally was enacted to prevent frivolous medical malpractice actions).  The court therefore concludes that, where a medical malpractice claim is transferred to this court from a jurisdiction without requirements comparable to section 52-190a, the plaintiff must file a good faith certificate and opinion of similar health care provider pursuant to section 52-190a within a reasonable period. In this case, the court concludes that it was reasonable for Macamaux to file these documents on May 22, 2009.  The delay from January 28, 2009 through April 28, 2009 is explained by Macamaux's attempts to obtain counsel, and the 24-day delay between the appearance of counsel and the filing of the good faith certificate and similar health care provider opinion is a reasonable period for counsel to obtain, prepare, and file such documents.  Consequently, section 52-190a does not provide a basis for the dismissal of this suit.

## IV.    CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss (Doc. No. 55) is **DENIED**.

**SO ORDERED**.

Dated at Bridgeport, Connecticut, this 4th day of September, 2009.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge

-11-